**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Benjamin Becher,<br><br>   Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>   Defendant. | No. CV-21-08273-PCT-DWL<br><br>**ORDER** |

Plaintiff challenges the denial of his application for benefits under the Social Security Act ("the Act") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed Plaintiff's opening brief (Doc. 9), Plaintiff's notice of supplemental authority (Doc. 10), the Commissioner's answering brief (Doc. 11), and Plaintiff's reply (Doc. 12), as well as the Administrative Record (Doc. 8, "AR"), and now affirms the decision of the Administrative Law Judge ("ALJ").

I.   Procedural History

On May 2, 2020, Plaintiff filed an application for disability and disability insurance benefits, alleging disability beginning on October 31, 2016. (AR at 14.) The Social Security Administration ("SSA") denied Plaintiff's application at the initial and reconsideration levels of administrative review and Plaintiff requested a hearing before an ALJ. (*Id.*) On August 18, 2021, following a telephonic hearing, the ALJ issued an unfavorable decision. (*Id.* at 11-26.) The Appeals Council later denied review. (*Id.* at 1-4.)

II.     The Sequential Evaluation Process And Judicial Review

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

III. <u>The ALJ's Decision</u>

The ALJ found that Plaintiff had not engaged in substantial, gainful work activity since the alleged onset date and that Plaintiff had the following severe impairments: "post-traumatic stress disorder (PTSD), major depressive disorder, generalized anxiety disorder, lumbar degenerative disc disease, sacroiliac disorder status post fusion, [and] right knee osteoarthritis status post arthroscopy." (AR at 16-17.)[1] Next, the ALJ concluded that Plaintiff's impairments did not meet or medically equal a listing. (*Id.* at 18-20.) Next, the ALJ calculated Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can lift and carry 20 pounds occasionally and 10 pounds frequently. He can stand and walk for six hours in an eight-hour day, and sit for six hours in an eight-hour day. The claimant can follow simple instructions, perform simple, routine tasks and have occasional contact with coworkers and the public. The claimant can adapt to changes in a simple work environment.

(*Id.* at 20-24.)

As part of this RFC determination, the ALJ evaluated Plaintiff's symptom testimony, concluding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.* at 24. *See also id.* at 19-20 [evaluating Plaintiff's testimony regarding mental symptoms during step-two analysis].) The ALJ also evaluated opinion evidence from various medical sources, concluding as follows: (1) Dr. K. Mallik, M.D., state agency medical consultant ("not very persuasive"); (2) Dr. Y. Schwartz, M.D., state agency medical consultant ("not very persuasive"); (3) Dr. Eugene Fierman, M.D., state agency psychological consultant ("not

---

[1] The ALJ also noted that Plaintiff presented evidence of "alcohol use disorder, opioid-related disorder and left shoulder biceps tenodesis" but found that "they do not significantly limit the claimant's physical or mental ability to do basic work activities for a continuous period of 12 months as required by SSR 85-28." (AR at 17.) Further, although Plaintiff complained of "left knee disorder," the ALJ determined it was "not a medically determinable impairment" based on physical examinations revealing "full strength and range of motion in the left knee" and no other treatment notes for the left knee "during the relevant treatment period." (*Id.* at 17-18.)

very persuasive"); (4) Dr. S. Fair, Ph.D., state agency psychological consultant ("very persuasive"); (5) Dr. A. Gallucci, Psy.D., state agency psychological consultant at reconsideration; (6) Dr. Jesus Lovett, Psy.D., consultative examiner ("persuasive only to the extent it is consistent with the residual functional capacity"); and (7) the disability determination provided by the Department of Veterans Affairs ("VA") ("no persuasive value"). (*Id.* at 20-24.) Additionally, the ALJ evaluated a third-party statement from Jane Becher, Plaintiff's wife. (*Id.* at 22.)

Based on the testimony of a vocational expert, the ALJ concluded that although Plaintiff was incapable of performing his past relevant work as an infantry operations specialist or a chef, he was capable of performing other jobs that exist in significant numbers in the national economy, including inspector hand packager, small parts assembler, or electronics worker. (*Id.* at 24-25.) Thus, the ALJ concluded that Plaintiff is not disabled. (*Id.* at 26.)

IV.  Discussion

Plaintiff presents two issues on appeal: (1) whether the ALJ erred when discrediting his symptom testimony (Doc. 9 at 7-13); and (2) whether the ALJ erred when discrediting the opinions of Dr. Lovett and crediting the opinions of Dr. Fair (*id.* at 13-20). As a remedy, Plaintiff seeks "remand for reconsideration of the evidence." (*Id.* at 20.)

    A.  **Plaintiff's Symptom Testimony**

        1.  Standard Of Review

An ALJ must evaluate whether the claimant has presented objective medical evidence of an impairment that "could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations omitted). If so, "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). Instead, the ALJ may "reject the claimant's testimony about the severity of [the] symptoms" only by "providing specific, clear, and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-

89 (9th Cir. 2015).

### 2. The ALJ's Evaluation Of Plaintiff's Symptom Testimony

The ALJ provided the following evaluation of Plaintiff's symptom testimony:

> As noted above, regarding the claimant's mental impairments, he reported experiencing traumatic events during his military service. His related symptoms include distressing dreams several nights per week, traumatic memories, avoiding certain movies and crowds, difficulty with focus, hypervigilance behaviors, agitation, and anger. The claimant sought and received inconsistent treatment with the Department of Veterans' Affairs, but reported that medication and treatment were not helpful. During mental status examinations, he was at times observed as fatigued, frustrated and tearful. However, he was largely observed as alert and oriented, pleasant and easily engaged, cooperative and reasonable, with normal mood and affect, appropriate grooming, intact memory and language, as well as normal and coherent thought processes. In a Mini Mental Status Exam, he scored 27 out of 30, suggesting adequate memory and concentration. Additionally, despite the claimant's allegations of avoidance and anger, records show he independently prepares meals, goes to the gym, socializes with friends on the weekends[,] attends doctor appointments, watches television, shops, helps to care for pets and his children, as well as drives. The evidence as a whole supports the mental limitations of the residual functional capacity. . . .
>
> The claimant alleges his lower back, bilateral knees and left shoulder pain, as well as mental impairments prevent him from performing substantial gainful activity. The claimant's allegations and reported difficulty with functioning were also noted by his wife, Jane Becher, in a Third-Party Function Report. He testified to limitations with performing activities of daily living, difficulty with walking and sitting, not being able to work in his garden nor help with coaching his children's sports. He denied performing household chores, socializing with friends and stated he stopped going to the gym one and a half years ago (hearing testimony). However, within the past year, both the claimant and his wife reported to providers that the claimant was able to perform activities of daily living, including preparing meals, coaching his children's sports, driving, gardening, managing personal hygiene, walking in the woods, caring for the dogs, traveling, socializing with friends weekly, playing soccer and working out in the gym. The claimant's own reports of his activity level are inconsistent with each other and do not support his allegations of disabling impairments.

(AR at 22, internal citations omitted.)

As noted, the ALJ declined to fully credit this testimony because Plaintiff's

- 5 -

"statements about the intensity, persistence, and limiting effects of his symptoms . . . are inconsistent with not only the objective medical evidence, but the remaining evidence of record." (*Id.*)  The ALJ then identified an array of reasons for making this determination: (1) Plaintiff's limitations were unsupported by objective treatment notes (AR at 22, citing *id.* at 298-307, 528, 545, 549, 610, 615-16, 731-38, 1054, 1092, 1151, 1226, 1239, 1245); (2) Plaintiff's limitations were inconsistent with his activities of daily living ("ADLs") (*id.* at 22, citing *id.* at 298-307 [Plaintiff's function report], 732 [Lovett report], 31-53 [Plaintiff's hearing testimony], 312-319 [third-party function report]); and (3) "treatment notes show the claimant responded well to treatment in contradiction to his testimony of continued disabling symptoms" (*id.* at 22).

3. The Parties' Arguments

Plaintiff argues that the ALJ failed to provide legally sufficient reasons for discrediting his symptom testimony.  (Doc. 9 at 7.)  Plaintiff contends he alleged the "most difficulty in the domains of concentrating, persisting, or maintaining pace" and "interacting with others," so any citations to the results of Mini-Mental Status Examinations are not relevant given the "persistence and pace" issues.  (*Id.* at 7-8.)  Plaintiff also contends that the ALJ's observations of "alert, oriented, pleasant and easily engaged, cooperative, with normal mood and affect, appropriate grooming, intact memory and language, and normal and coherent thought processes" should be contrasted with other records that demonstrate "anxious mood and corresponding affect." (*Id.* at 8-9, citing AR at 612-13, 1211-12, 1230-31, 1235, 1237-38, 1244.)  According to Plaintiff, the evidence cited by the ALJ only demonstrates that he can control "himself in a clinical setting where he is visibly cautious with his emotions," which is a "limited setting," and "does not mean that he can maintain that cooperative affect in all situations." (*Id.* at 9.)  Regarding ADLs, Plaintiff argues that the activities of "going to a gym, spending time with friends, and potentially shopping" are consistent with, and do not undermine, his "allegations of avoidance and anger." (*Id.* 10.)  Plaintiff also notes that Dr. Lovett interpreted his participation in a "small gym" as an avoidance behavior. (*Id.*, citing AR at 732.)  Further, Plaintiff argues there is "no indication

of how long [Plaintiff] can tolerate a shop." (*Id.*)  As for his interaction with friends, Plaintiff contends that the caveat of the friends being "comrades at arms" indicates that the activity is a "form of therapy" and is "very different from an activity that is readily transferable to a work setting, where war stories would not be tolerated." (*Id.*, citing AR at 43, 48-49.)  More broadly, Plaintiff argues that any purported inconsistencies identified by the ALJ are belied by the record. (*Id.* at 10-12.)  Finally, Plaintiff argues that the ALJ's unsupported statement that he responded well to treatment is directly contradicted by various treatment notes. (*Id.* at 12, citing AR at 22, 1226, 1235-36, 985, 612, 361, 362.)

The Commissioner defends the sufficiency of the ALJ's reasoning, arguing that the ALJ properly discredited Plaintiff's symptom testimony based on (1) the ALJ's review of the objective medical evidence; (2) Plaintiff's ADLs; and (3) the ALJ's review of prior administrative medical findings. (Doc. 11 at 5-9.)

In reply, Plaintiff first challenges the Commissioner's contention that objective medical evidence can support discrediting his testimony. (Doc. 12 at 1-2.)  Next, Plaintiff reiterates that the ALJ's ADL findings must "make sense and be supported by substantial evidence" and are unsupported by substantial evidence when "that symptom testimony about one impairment is less persuasive because the claimant can perform tasks that would implicate entirely different impairments." (*Id.* at 2.)  Finally, Plaintiff argues that any discussion of the prior administrative medical findings is irrelevant because the ALJ did not specifically articulate those findings as a reason to discredit his testimony. (*Id.* at 2-3.)

### 4. Analysis

The Court finds no harmful error in the ALJ's decision to discredit Plaintiff's symptom testimony.  One of the reasons the ALJ provided for the adverse credibility determination was that Plaintiff's description of his symptoms conflicted with Plaintiff's ADLs.[2]  Under Ninth Circuit law, this is a permissible basis for discounting a claimant's

---

[2] In his reply, Plaintiff contends that "Defendant does not address Plaintiff's argument that the evidence of daily activities the ALJ cited in support of the finding of nondisability does not speak to the impairments that [Plaintiff] alleged." (Doc. 12 at 2.)  This contention is inaccurate—in the answering brief, the Commissioner specifically argued that "[t]he ALJ . . . properly considered that Plaintiff's daily activities . . . contradicted the degree of

symptom testimony. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) ("[T]he ALJ may consider inconsistencies . . . between the testimony and the claimant's conduct . . . and whether the claimant engages in daily activities inconsistent with the alleged symptoms. While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.") (cleaned up); *Fry v. Berryhill*, 749 F. App'x 659, 660 (9th Cir. 2019) ("The ALJ proffered specific, clear, and convincing reasons for discounting Fry's testimony concerning the severity of her symptoms, including inconsistencies between her daily activities and alleged limitations . . . .").

The ALJ's finding of inconsistency was also supported by substantial evidence. Plaintiff testified that he "cannot work around a lot of people due to [his] PTSD" (AR at 299); that it takes him "a long time in the morning just kind of trying to get [himself] together" (*id.* at 47); and that he is prone to "bouts of aggression" (*id.* at 46). However, in his function report, Plaintiff reported making "fast meals for everyone" in his family, seeing "a core group of friends . . . on weekends," and attending his "kids' sports practice and games" before COVID (*id.* at 300-01, 303). Similarly, although Plaintiff reported not getting along well with others (aside from veterans) (*id.* at 304), his wife confirmed that Plaintiff engages with their group of friends "a few times a month" (including going to dinner at another person's home), helps with the kids and pets, uses the gym regularly, cooks meals for the family and himself, and attends the kids' sporting events (*id.* at 316). Although Plaintiff does not perform any household chores, he "cares for four children," goes to the grocery store, and "attends a small gym down the street." (*Id.* at 732.) As for his ability to get ready in a timely manner, Plaintiff testified at the hearing that on a "typical day" he is responsible for getting the kids to and from school. (*Id.* at 40.) Although

disabling symptoms and limitations he alleged." (Doc. 11 at 7.)

- 8 -

Plaintiff attempts to identify various ways in which these sets of statements regarding his ADLs could be reconciled with his symptom testimony, it was rational for the ALJ to conclude they were contradictory. And "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954.

It should be noted that upholding an adverse credibility finding in this circumstance does not result in "disability claimants [being] penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The Ninth Circuit has recognized that "[i]nconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination." *Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014). *See also Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (recognizing that a "tendency to exaggerate" is a "specific and convincing reason[]" for discrediting a claimant's testimony); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) ("To determine whether the claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider . . . ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid . . . .").

It was also permissible under Ninth Circuit law for the ALJ to discount Plaintiff's symptom testimony on the ground that it was inconsistent with the objective medical evidence in the record. Although this may not serve as an ALJ's sole reason for discounting a claimant's symptom testimony, it is a permissible consideration when (as here) it is coupled with other grounds for an adverse credibility finding. *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("Claimants like Smartt sometimes mischaracterize [Ninth Circuit law] as completely forbidding an ALJ from using inconsistent objective medical evidence in the record to discount subjective symptom testimony. That is a misreading of [Ninth Circuit law]. When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such

testimony. We have upheld ALJ decisions that do just that in many cases."); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."). The ALJ identified numerous appointments at which Plaintiff was able to communicate appropriately with providers and presented in a manner that was inconsistent with how Plaintiff sought to characterize himself via his symptom testimony. (AR at 23, citing AR at 528, 545, 549, 610 ["He coaches little league football . . . . His mood is slightly anxious and affect is appropriate to mood and thought content."], 615-16, 1054, 1092, 1151, 1238 ["The Veteran was clean and kempt. He was oriented x3. Mood and affect congruent. He is easily engaged. He appears to continue to assess writer for comfort."], 1244 ["The Veteran was clean and kempt. He was oriented x3. Mood and affect congruent. He is a bit guarded but pleasant and engaged."].)

Because the ALJ identified multiple clear and convincing reasons, supported by substantial evidence, for discrediting Plaintiff's symptom testimony, any errors in the ALJ's other reasons for discrediting that testimony were harmless. *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) ("Because we conclude that two of the ALJ's reasons supporting his adverse credibility finding are invalid, we must determine whether the ALJ's reliance on such reasons was harmless error. . . . [T]he relevant inquiry in this context is not whether the ALJ would have made a different decision absent any error, it is whether the ALJ's decision remains legally valid, despite such error. . . . Here, the ALJ's decision finding Carmickle less than fully credible is valid, despite the errors identified above.").

…

…

B.     **Dr. Lovett's Opinions**

1.     Standard Of Review

In January 2017, the SSA amended the regulations concerning the evaluation of medical opinion evidence. *See Revisions to Rules Regarding Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Because the new regulations apply to applications filed on or after March 27, 2017, they are applicable here.

The new regulations, which eliminate the previous hierarchy of medical opinions, provide in relevant part as follows:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources . . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency . . . .

20 C.F.R. § 416.920c(a).[3] Regarding the "supportability" factor, the new regulations explain that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), . . . the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1). Regarding the "consistency" factor, the "more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2)

Recently, the Ninth Circuit confirmed that the "recent changes to the Social Security Administration's regulations displace our longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Thus, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies. Now, an ALJ's decision,

---

[3]     Other factors that may be considered by the ALJ in addition to supportability and consistency include the provider's relationship with the claimant, the length of the treatment relationship, the frequency of examinations, the purpose and extent of the treatment relationship, and the specialization of the provider. 20 C.F.R. § 416.920c(c).

- 11 -

including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* With that said, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id.* at 792 (cleaned up). Although an "ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records . . . the ALJ no longer needs to make specific findings regarding these relationship factors . . . ." *Id.*

### 2. Dr. Lovett's Opinions

Dr. Lovett, a consultive psychological examiner, examined Plaintiff on August 31, 2020.[4] (AR at 731.) During the examination, Dr. Lovett observed that Plaintiff "arrived for his appointment on time," was "dressed casually and appropriately," appeared "clean and was not malodorous," and had a normal energy level, although his mood was "anxious and tense" and his "[a]ffect was constricted." (*Id.* at 733.) Dr. Lovett also remarked that Plaintiff's "[t]hought processes were logical and goal directed" and detected no "unusual perceptual disturbances." (*Id.*) In evaluating Plaintiff's effort and cooperation in the exam, Dr. Lovett found that Plaintiff "put forth a good effort" with a "compliant" demeanor but was "noticeably anxious and tense when discussing his combat events and PTSD symptoms." (*Id.* at 734.) Dr. Lovett's "diagnostic statement" included "chronic" PTSD, "moderate" alcohol use disorder, and unspecified opioid-related disorder. (*Id.*)

In a form entitled "Psychological/Psychiatric Medical Source Statement," Dr. Lovett opined that Plaintiff had a current psychological diagnosis that would impose limitations for 12 months. (*Id.* at 736.) Dr. Lovett more specifically found as follows:

---

[4] Dr. Lovett's report was completed on September 13, 2020. (AR at 737.)

>    UNDERSTANDING AND MEMORY
>
>    [Plaintiff] was able to understand and answer all questions during the interview. He recall several details from his recent and remote psychosocial history. His MMSE-2 score was in the unimpaired range. He has a bachelor's degree and completed culinary school. He obtained minors in two foreign languages as a communications sergeant in US special forces. He also worked several years as a chef prior to military service. He will be able to understand and remember simple instructions, detailed instructions and work-like procedures. However, his PTSD symptoms are active and will contribute to mild impairment in his memory due to distress.
>
>    SUSTAINED CONCENTRATION AND PERSISTENCE
>
>    [Plaintiff] was able to sustain adequate attention and focus to tolerate the exam. He was tense and anxious, but endured the exam with distress. He can carry out simple and detailed instructions and make simple decisions with mild impairment due to PTSD. His PTSD symptoms will cause moderate to marked impairment in his ability to maintain regular attendance and sustain concentration to complete a normal workday at a consistent pace.
>
>    SOCIAL INTERACTION
>
>    The claimant was cooperative and forthcoming. His appearance and hygiene were good. His PTSD symptoms (e.g., hypervigilance, irritability, avoidance, intrusive memories, triggers) will contribute to discomfort in situations with groups of people that can cause moderate to severe impairment inn his ability to interact appropriately with the general public, get along with co-workers, and respond appropriately to supervision. He can adhere to basic standards of neatness. He can ask simple questions.
>
>    ADAPTING TO CHANGE
>
>    [Plaintiff] presents with chronic PTSD symptoms and co-occurring alcohol use. He is not engaged in mental health treatment due to avoidance as well as pessimism given lack of significant improvement after previous PTSD and substance use treatment. His symptoms will impact his ability to tolerate stressful situations, particularly involving groups of people or interacting with customers. He can be aware of normal hazards and take appropriate action. He can travel in unfamiliar places, but will likely experience hypervigilance and emotional/physiological distress. He can set realistic goals independently.

(*Id.* at 736-37.)

### 3. The ALJ's Evaluation Of Dr. Lovett's Opinions

The ALJ grouped together the analysis of all of the mental examiners. The ALJ's complete rationale is as follows:

>    At the initial level, state agency psychological consultant, Eugene Fierman, M.D., opined the claimant's mental impairments were non-severe. State agency psychological consultant, S. Fair, Ph.D., opined the claimant was able to perform simple, unskilled tasks in a setting with limited contact with

others. Upon reconsideration, state agency psychological consultant, A. Gallucci, Psy.D., opined the claimant was able to carry out simple instructions and make simple work-related decisions. Jesus Lovett, Psy.D., conducted a consultative examination and opined the claimant was able to understand and remember simple and detailed instructions. He had a moderate to marked impairment in his ability to maintain regular attendance and sustain concentration. His PTSD symptoms would cause moderate to severe impairment in his ability to interact appropriately with others. His symptoms would impact his ability to tolerate stressful situation, but he was able to be aware of normal hazards and take appropriate action.

The treatment notes support limitations consistent with the residual functional capacity. Limiting the claimant to simple, routine tasks, with only occasional contact with co-workers and the public, are supported given his reported symptoms of distressing dreams several nights per week, traumatic memories, avoiding certain movies and crowds, difficulty with focus, hypervigilance behaviors, agitation, and anger. Though the claimant's treatment has been inconsistent and he has struggled with substance abuse, it is unclear what mental symptoms would remain in the absence of these obstacles. However, the undersigned is unable to find the claimant any further limited than in this decision, given that during mental status examinations, he was largely observed as alert and oriented, pleasant and easily engaged, cooperative and reasonable, with normal mood and affect, appropriate grooming, intact memory and language, as well as normal and coherent thought processes

Dr. Fierman's opinion is not consistent with the evidence as a whole and does not take into consideration all the limitations the claimant would experience as a result of his impairments. For the preceding reasons the undersigned finds this opinion is not very persuasive. Dr. Fair's opinion is fairly consistent with the evidence as a whole and the undersigned finds this opinion to be very persuasive. [Dr. Lovett's] opinion is not consistent with the evidence as a whole and appears to be based largely on the claimant's subjective complaints. For the preceding reasons, the undersigned finds this opinion is persuasive only to the extent it is consistent with the residual functional capacity.

(AR at 23-24, internal citations omitted.)[5]

### 4. The Parties' Arguments

As an initial matter, Plaintiff noted that had Dr. Lovett's opinions been credited, he would have been found disabled at step three or step five.[6] (Doc. 9 at 15.) On the merits, Plaintiff argues that the ALJ's single explanation for not crediting Dr. Lovett's opinions

---

[5] Plaintiff and the Commissioner appear to agree that the ALJ's last reference to "Dr. Gallucci" is in fact a reference to Dr. Lovett, as indicated by the brackets. (Doc. 9 at 18; Doc. 11 at 11 n.9.)

[6] Plaintiff also advances the theory that the "specific and legitimate" standard remains in effect under the new regulations. (Doc. 9 at 15-17.) However, after the Ninth Circuit decided *Woods*, Plaintiff clarified that this position is no longer viable. (Doc. 10.)

- 14 -

("[Dr. Lovett's] opinion is not consistent with the evidence as a whole and appears to be based largely on the claimant's subjective complaints.") was insufficient under 20 C.F.R. § 404.1520c. (*Id.* at 18.) According to Plaintiff, the ALJ both (1) failed to explain "how the opinion that Mr. Becher would have a moderate to marked impairment in his ability to maintain regular attendance and sustain concentration to complete a normal workday a consistent pace or that his ability to tolerate stressful situations involving groups of people would be impacted to a moderate to severe level was inconsistent with other evidence of record" and (2) failed to "remark upon the factor of supportability regarding Dr. Lovett's opinion at all, apart from a reference to the fact that Dr. Lovett relied in part on Mr. Becher's subjective statements." (*Id.*)

The Commissioner disagrees and defends the sufficiency of the ALJ's rationale for discrediting the opinions of Dr. Lovett. (Doc. 11 at 11-13.) According to the Commissioner, the ALJ permissibly found that Dr. Lovett's opinions could be discredited under the supportability and consistency factors. (*Id.*) As for the supportability factor, the Commissioner argues that it is permissible to discount a medical opinion due to overreliance on the claimant's subjective complaints. (*Id.* at 11.) As for the consistency factor, the Commissioner contends there is substantial evidence to support the ALJ's finding of inconsistency because Plaintiff's "mental status examinations largely showed Plaintiff to be alert and oriented, pleasant and easily engaged, and cooperative and reasonable and to have normal mood and affect, appropriate grooming, intact memory and language, and normal and coherent thought processes." (*Id.* at 12, citing AR at 22, 528, 545, 549, 610, 615-616, 1054, 1092, 1151, 1226, 1238, 1244.) The Commissioner also notes that Dr. Lovett's opinions were inconsistent with Plaintiff's ADLs. (*Id.* at 13.)

In reply, Plaintiff argues that the ALJ's evaluation of Dr. Lovett's opinions remains erroneous because (1) the ALJ cannot discredit Dr. Lovett's opinions based solely on Dr. Lovett's reliance on subjective statements and (2) "Dr. Lovett clearly based his opinion, in part, upon clinical observations." (Doc. 12 at 4-6.) Plaintiff also criticizes the Commissioner for an overly narrow reading of "concentration and persistence" as a

Paragraph B element. (*Id.* at 5-6.)

5. Analysis

The ALJ's evaluation of Dr. Lovett's opinions is free of harmful error. "The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Woods*, 32 F.4th at 792 (cleaned up). Here, the ALJ stated that "[Dr. Lovett's] opinion is not consistent with the evidence as a whole and appears to be based largely on the claimant's subjective complaints." (AR at 24.) This rationale is supported by substantial evidence.

The supportability factor examines "the objective medical evidence and supporting explanations presented by a medical source . . . to support his or her medical opinion." 20 C.F.R. § 404.1520c(c)(1). The more objective medical evidence that corroborates an opinion, the more persuasive it is. *Id.* The ALJ addressed the supportability factor by stating that Dr. Lovett's opinion "appears to be based largely on the claimant's subjective complaints." (AR at 24.) "A physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (citation omitted). As explained in Part IV.A above, the ALJ permissibly discounted Plaintiff's symptom testimony as inconsistent with his ADLs and belied by the objective medical evidence.

Plaintiff questions whether Dr. Lovett relied only on subjective complaints and argues that Dr. Lovett also relied on clinical observations. (Doc. 9 at 18-19; Doc. 12 at 5-6.) This argument is unavailing. As the Commissioner correctly notes, Dr. Lovett's report includes numerous references to Plaintiff's subjective complaints, including extensive quotations from Plaintiff regarding Plaintiff's reported symptoms. (*See, e.g.*, AR at 731 ["[Plaintiff] stated that he applied for disability benefits because 'I have not even tried to hold down a job and it is the physical and being out in public.'"]; *id.* at 732 ["[Plaintiff] went on to describe his symptoms in the following manner . . ."]; *id.* ["He reported

avoidance behaviors: 'I don't watch war movies anymore. I don't get out much. I go to a small gym.' He avoids large gatherings 'because it is a safety thing or I might start reacting to certain movements.'"].) It was therefore rational for the ALJ to conclude that Dr. Lovett relied "largely" on Plaintiff's self-reported symptoms. And because the ALJ permissibly found those self-reports to be not entirely credible, as discussed in Part IV.A above, it was permissible for the ALJ to conclude that the supportability factor undermined the persuasiveness of Dr. Lovett's opinions.

The consistency factor provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). As noted, the ALJ concluded that Dr. Lovett's opinion was "not consistent with the evidence as a whole." (AR at 24.) On the preceding page of the opinion, the ALJ summarized the findings and opinions of the other examining medical sources, which demonstrated that Dr. Lovett's restrictions were the most severe of the four. (*Id.* at 23.) The ALJ also provided a detailed summary of evidence that could rationally be viewed as inconsistent against Dr. Lovett's restrictive conclusions. For example, "during mental status examinations, [Plaintiff] was largely observed as alert and oriented, pleasant and easily engaged, cooperative and reasonable, with normal mood and affect, appropriate grooming, intact memory and language, as well as normal and coherent thought processes." (*Id.* at 22, citing *id.* at 528, 545, 549, 610, 615-616, 1054, 1092, 1151, 1226, 1238, 1244.) The ALJ also rationally concluded that Plaintiff's ADLs were inconsistent with severe restrictions. The ALJ reasoned that "[Plaintiff's] own reports of his activity level are inconsistent with each other and do not support his allegations of disabling impairments." (AR at 23.) Plaintiff reported within the past year that he was "able to perform activities of daily living, including preparing meals, coaching his children's sports, driving, gardening, managing personal hygiene, walking in the woods, caring for the dogs, traveling, socializing with friends weekly, playing soccer and working out in the gym." (*Id.* at 23.) Therefore, the ALJ

adequately discussed both the supportability and consistency of Dr. Lovett's opinions and made findings as to both factors that are supported by substantial evidence.

Plaintiff also argues that the ALJ "failed to explain how the opinion that [Plaintiff] would have a moderate to marked impairment in his ability to maintain regular attendance and sustain concentration to complete a normal workday a consistent pace or that his ability to tolerate stressful situations involving groups of people would be impacted to a moderate to severe level was inconsistent with other evidence of record." (Doc. 9 at 18.) This criticism does not require reversal. First, the ALJ is not required to explain how every aspect of a medical opinion is inconsistent with the entirety of the record. The ALJ must only consider the consistency and supportability factors. Second, the records cited by Plaintiff do not support his claimed limitations. (Doc. 9 at 18, citing AR at 610 ["[Plaintiff] is attending summer college science courses. He coaches little league football for his current wife's children. . . . Memory, though not formally tested, is adequate for this interview and shoes no impairment. Cognition intact. Judgment and insight are appropriate."], 613 [same], 988 [noting Plaintiff reports "PTSD sx including anxiety discomfort in crowds and hypervigilance" but also was "calm and cooperative," had "intact" insight, and "Pt understands ramifications of his/her actions"], 1230-31 [noting Plaintiff was "pleasant calm and cooperative" with "linear and goal oriented" thought processes, but also indicates Plaintiff's reports of worsening interpersonal behavior and issues with alcohol"].) At best, these records are equivocal. As such, the Court cannot second-guess the ALJ's interpretation of them. *Thomas*, 278 F.3d at 954.

C. **Dr. Fair**

Dr. Fair generally opined that Plaintiff can "perform simple, unskilled tasks in a setting with limited interaction with others." (AR at 23, citing AR at 76, 85.) The ALJ found Dr. Fair's opinion to be "very persuasive" because it was "fairly consistent with the evidence as a whole." (*Id.* at 23-24.)

Plaintiff argues that "the ALJ did not adequately explain why Dr. Fair's opinion was more persuasive than Dr. Lovett's opinion." (Doc. 9 at 19.) The Commissioner responds

that "Plaintiff incorrectly suggests that the ALJ was tasked with comparing Dr. Lovett's and Dr. Fair's conclusions against each other in order to choose one over the other." (Doc. 11 at 13.) The Commissioner also contends that, "in addition to reviewing other evidence Dr. Lovett did not have an opportunity to review, Dr. Fair . . . had the opportunity to thoroughly review and consider Dr. Lovett's findings in opinions before offering his own assessment of Plaintiff's mental function." (*Id.* at 14.) In reply, Plaintiff clarifies that his argument is that "the ALJ erred by finding Dr. Fair's opinion persuasive without explaining why," which was harmful because "Dr. Lovett and Dr. Fair relied on essentially the same objective information to arrive at two different conclusions, and the ALJ found one opinion completely persuasive and the other not." (Doc. 12 at 6-7.) Plaintiff also dismisses as "peculiar" the notion that the ALJ could have found Dr. Fair's opinion more persuasive because Dr. Fair had access to a wider range of materials (including Dr. Lovett's opinion), arguing that the Commissioner "essentially argues for a holding that the most recent medical opinion will always be the most persuasive, regardless of whether there is any additional objective evidence, because the most recent medical source has the opportunity to agree or disagree with prior opinions. . . . Mere disagreement with roughly contemporaneous opinions does not render one more persuasive than the other." (*Id.* at 6.)

Plaintiff is not entitled to reversal based on his challenges concerning Dr. Fair. Although Plaintiff asks the Court to find error based on the ALJ's failure to "explain why Dr. Fair's opinion was more persuasive than Dr. Lovett's opinion" (Doc. 9 at 19), this assignment of error has no basis in the law. Under the new regulations, the ALJ must simply "articulate how persuasive [the ALJ] finds all of the medical opinions from each doctor or other source and explain how [the ALJ] considered the supportability and consistency factors in reaching these findings." *Woods*, 32 F.4th at 792 (cleaned up). Although Plaintiff's reply attempts recast his argument as a substantial evidence challenge, Plaintiff still fails to make any concrete challenge to the ALJ's persuasiveness finding other than a failure to distinguish between Dr. Lovett and Dr. Fair. (Doc. 12 at 6-7.) Because the ALJ was not required to compare the two opinions, the Court finds no error.

Finally, even if Plaintiff had properly raised a substantial evidence challenge, the Court would affirm for essentially the same reasons outlined in relation to the ALJ's evaluation of Dr. Lovett's opinions. The ALJ considered the supportability and consistency factors when evaluating Dr. Fair's opinions, it was rational to conclude that both factors supported Dr. Fair's opinions, and substantial evidence supports the ALJ's determinations. (*See generally* AR at 23-24 [citing objective evidence, ADLs, and other medical providers' more limited restrictions to support the RFC finding].)

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **affirmed**. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 21st day of March, 2023.

_____
Dominic W. Lanza
United States District Judge